**Paul F. NARDONE et al.**

v.

**Natale RITACCO et al.**

**No. 2006–342–Appeal.**

Supreme Court of Rhode Island.

Dec. 3, 2007.

Staci L. Kolb, Esq., Providence, for Plaintiff.

Michael P. Lynch, Esq., Westerly, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

This matter comes to us on the appeal of the defendants, Natale Ritacco, Pasquale Ritacco, Frank Scavello, Salvatore Scavello, Louis Scavello, Josepha Ritacco, Domenic Capizzano, and Rose Capizzano (collectively defendants), from a Superior Court judgment in favor of the plaintiffs, Paul F. Nardone and Betty Jo Nardone (collectively plaintiffs). This case came before the Supreme Court for oral argument on October 30, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we affirm in part and reverse in part the judgment of the Superior Court.

## I

### Facts and Travel

We are far from the beginning of this seemingly endless and complicated journey. Rather, the matter before this Court is reminiscent of the fictional chancery case of Jarndyce and Jarndyce, as described by Charles Dickens in the novel *Bleak House*, because this case like that one, "drones on."[1] This case involves a long-running dispute over a deeded right-of-way in the Town of Hopkinton, Rhode

---

1. Charles Dickens, *Bleak House* 4 (Everyman's Library 1991) (1907).

Island. The plaintiffs' property is designated as lot No. 78 on tax assessor's plat 10. This parcel borders Lawton Foster Road. The defendants own an adjacent parcel of land, designated as lot No. 77A on tax assessor's plat 10; it is located directly behind plaintiffs' property and has no frontage along Lawton Foster Road. In 1965, plaintiffs' predecessor-in-interest, Ralph C. James, Sr., granted to defendants Natale Ritacco, George Ritacco, Pasquale Ritacco, Francesco Scavello, and their successors, a fifty-foot right-of-way along the northern boundary line of what is now plaintiffs' property. The plaintiffs acquired their property in 1993. This right-of-way over plaintiffs' property, for ingress from and egress to Lawton Foster Road, has been the subject of many years of litigation.

During Memorial Day weekend of 1999, defendants caused trees and vegetation to be cut within the fifty-foot right-of-way. On June 1, 1999, plaintiffs filed a complaint and sought temporary and permanent injunctive relief to prohibit defendants from cutting trees and vegetation and to prevent defendants from trespassing on their land. The motion justice entered an order granting plaintiffs' preliminary injunction on June 22, 1999. Two months later, plaintiffs filed a motion to adjudge defendants in contempt of the June 22, 1999 order; they alleged that defendants violated the order by cutting trees and vegetation outside the right-of-way.

After hearing both parties, the motion justice entered a consent order on September 3, 1999. The consent order identified the right-of-way as "the fifty-foot right of way which commences on the northern boundary of Plaintiffs' real property." Additionally, it reiterated that "[d]efendants

may not cut or remove any vegetation, trees, or underbrush, or pave any area outside the fifty-foot [right-of-way]." Subsequently, plaintiffs filed multiple motions to adjudge defendants in contempt on March 2, 2000, June 13, 2001, July 6, 2001, July 24, 2003, and July 20, 2004; they alleged that defendants were continuously violating the June 22, 1999 order.

A key source of contention at trial was the location of the right-of-way and whether defendants were in contempt of any prior court orders. In addition to arguing that the right-of-way was not, in fact, originally located along the northern boundary of plaintiffs' property, defendants also asserted two alternative claims for relief—the existence of an easement by prescription as well as an easement by substitution over plaintiffs' driveway. On October 1, 2004, the trial justice rendered a decision in favor of plaintiffs, clarifying that the right-of-way is located along the northern boundary of plaintiffs' property.[2] He also ordered defendants to pay $8,147 in attorney's fees to plaintiffs as a sanction for contempt. The defendants timely appealed.

## II

### Analysis

On appeal, defendants argue that the trial justice erred in concluding that the right-of-way is located on the northern boundary of plaintiffs' property. The defendants allege that there was no competent evidence in the record to support this result and that the right-of-way includes plaintiffs' driveway. The defendants further contend that the trial justice erred in failing to address their counterclaims for an easement by prescription and an ease-

---

2. We are mindful of the inordinate delay of the decision of the trial justice, which this     Court does not favor.

ment by substitution over plaintiffs' driveway. Finally, they assert that the trial justice erred in awarding counsel fees to plaintiffs when there was no evidence of a willful violation of a court order.

## A

### Standard of Review

We review the findings of fact by a justice sitting without a jury deferentially. *Imperial Casualty and Indemnity Co. v. Bellini*, 888 A.2d 957, 961 (R.I.2005). "It is well settled that '[t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.'" *Id.* (quoting *Macera v. Cerra*, 789 A.2d 890, 892–93 (R.I.2002)). "[I]f, on review, the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached." *Id.* (quoting *Nisenzon v. Sadowski*, 689 A.2d 1037, 1042 (R.I.1997)).

When reviewing a civil motion to adjudge in contempt, this Court will afford the trial justice great deference. *Direct Action for Rights and Equality v. Gannon*, 819 A.2d 651, 661 (R.I.2003). "A complaining party can establish civil contempt on behalf of his opponent when there is clear and convincing evidence that a lawful decree has been violated. * * * Findings of contempt are within the discretion of the trial justice and this Court will only overturn such findings where they are clearly wrong." *Id.*

## B

### Location of the Right–of–Way

The defendants contend that the trial justice erred in determining that the right-of-way was located along the northern boundary of plaintiffs' property. The relevant deed from Mr. James, which granted the right-of-way to Natale Ritacco, George Ritacco, Pasquale Ritacco, and Francesco Scavello, places the right-of-way "along the northerly boundary line of the grantor's premises." The trial justice reviewed this language and heard expert testimony from both parties concerning the location of the right-of-way. The plaintiffs introduced expert testimony from a registered and licensed engineer and surveyor, who testified that, upon examining plaintiffs' property, the boundaries were clear and the right-of-way was located along the northern boundary of plaintiffs' property. The defendants' expert, also a registered and licensed engineer and surveyor, testified that he could not determine the location of the right-of-way because of an ambiguity in the deed. Yet on cross-examination, defendants' expert stated that he did not actually survey the property but simply looked at the various deeds.

Upon hearing the testimony from both experts, the trial justice accepted that of plaintiffs' expert because he was "[t]he only person who surveyed the land in question." Ultimately, the trial justice found in favor of plaintiffs and concluded that he had no doubt that the right-of-way existed along the northern boundary of plaintiffs' property.

A review of the record plainly supports the trial justice's findings. It was well within the trial justice's discretion to conclude that plaintiffs presented credible evidence of the right-of-way's location along the northern boundary of plaintiffs' property. Indeed, this finding comports with the September 3, 1999 consent order, which places the right-of-way along the

northern boundary of plaintiffs' property. The trial justice's finding of the location of the right-of-way, given his credibility determinations and the evidence presented, was soundly within his discretion, and accordingly this Court will affirm his determination.

## C

### Easement by Prescription

■■■ "[M]an, like a tree in the cleft of a rock, gradually shapes his roots to his surroundings, and when the roots have grown to a certain size, can't be displaced without cutting at his life." [3] The doctrines of adverse possession and prescriptive easement largely reflect this reality. In Rhode Island, "[o]ne who claims an easement by prescription bears the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years." *Stone v. Green Hill Civic Association, Inc.,* 786 A.2d 387, 389 (R.I.2001) (citing *Palisades Sales Corp. v. Walsh,* 459 A.2d 933, 936 (R.I.1983)). *See also Carnevale v. Dupee,* 783 A.2d 404, 409 (R.I.2001). "The determination of whether or not a claimant has satisfied the burden of proving each of these elements by clear and satisfactory evidence involves an exercise of the fact-finding power." *Stone,* 786 A.2d at 389–90. Indeed, "factual determinations are generally necessary to determine whether claimants have established the elements of a prescriptive easement." *Id.* at 391. The defendants contend that the trial justice

erred by failing to address their claim for an easement by prescription over plaintiffs' driveway.

The defendants allege that they have presented substantial evidence to support their claim for an easement by prescription. This Court agrees with defendants to an extent—there is substantial evidence in the record that defendants have used the driveway openly, notoriously, and continuously for a period of ten years. There is no dispute that defendants were using plaintiffs' driveway both openly and notoriously—indeed, their use of plaintiffs' driveway is the impetus behind the underlying cause of action. Nor is there a dispute that defendants' use has been uninterrupted. What is uncertain, however, is whether defendants used the driveway hostilely, or without permission, for the requisite ten-year period.

To support their contention that defendants used plaintiffs' driveway without permission, defendants cite the testimony of Louis R. Sansone, one of plaintiffs' predecessors-in-interest, who testified that he was never asked, nor did he ever give, his permission to use the driveway.[4] Additionally, defendant Salvatore Scavello testified that he never asked for permission to use the driveway, nor did he ever receive permission to use the driveway.[5] However, there is also testimony from Salvatore Scavello concerning statements and actions by Mr. James, plaintiffs' predecessor-in-interest, who originally deeded the right-of-way, but is now deceased. Salvatore

---

**3.** *The Mind and Faith of Justice Holmes: His Speeches, Essays, Letters, and Judicial Opinions* 417–18 (Max Lerner ed.1989).

**4.** "Q: Now, did anyone ever ask your permission to use that driveway?
"A: No.
"Q: Did you ever give anyone your permission to use that driveway?

"A: I—it wasn't asked, so I never gave anybody permission. I mean it's moot as far as I'm concerned."

**5.** "Q: Did you ever access anybody's permission to use it that way?
"A: No, we didn't.
"Q: Were you ever given anybody's permission to use it that way?
"A: No."

Scavello alleges that Mr. James, when pointing out the right-of-way, pointed to the middle of the driveway and indicated that he was giving defendants the driveway as part of the right-of-way, as a matter of convenience.[6] Certainly this testimony could be construed as an indication of permission to use the driveway.

Our careful review of the record, therefore, reveals issues that were raised in the pleadings and testified to during trial, and which should have been addressed in the trial justice's decision. The trial justice failed to address the issue of permissive use of the driveway, let alone determine whether sufficient factual support existed to conclude that permission to use the driveway was given by plaintiffs or their predecessors-in-interest. Had the trial justice credited the testimony of Salvatore Scavello and Mr. Sansone, he reasonably could have concluded that defendants never received permission to use the driveway, and accordingly, had acquired a prescriptive easement over the driveway. Alternatively, had the trial justice credited Mr. Scavello's testimony about his conversations with Mr. James, he reasonably could have concluded that defendants had indeed received permission to use the driveway, and, therefore, defendants would not have established the hostile element needed to satisfy a prescriptive easement claim.

"Rule 52(a) of the Superior Court Rules of Civil Procedure requires the trial justice in a nonjury trial to make specific findings of fact upon which he [or she] bases his decision." *White v. LeClerc,* 468 A.2d 289, 290 (R.I.1983). The rule specifically requires the court to "find the facts specially and state separately its conclusions of law thereon * * *." Super. R. Civ. P. 52(a). It is important to note that "[t]he trial justice need not engage in extensive analysis to comply with this requirement." *White,* 468 A.2d at 290. We cannot, however, "be kept in the dark when we review, and noncompliance with the rule will entail the risk of reversal or remand unless the record will yield a full understanding and resolution of the controlling and essential factual and legal issues." *Town of Charlestown v. Beattie,* 422 A.2d 1250, 1251 (R.I.1980) (quoting *Rowell v. Kaplan,* 103 R.I. 60, 70, 235 A.2d 91, 97 (1967)).

The plaintiffs contend that the trial justice indeed addressed the prescriptive easement issue in his decision on October 1, 2004, when he stated that "[i]t might be pointed out that for many years the defendants utilized the 10–12 foot way at the suggestion of the original grantor, but I believe deliberately misstates the grantor's language to justify their position at this time." That is too much of a stretch. This language hardly constitutes findings of fact or conclusions of law on the prescriptive easement claim.

Whether a prescriptive easement has been established depends upon which evidence is to be credited and which rejected. To resolve the question of whether defendants were acting with permission from plaintiffs or one of plaintiffs' predecessors-in-interest, it is necessary to make a factual finding concerning whether plaintiffs or their predecessors granted defendants permission to use the driveway. The record in this case does not yield a full confrontation and resolution of the controlling

---

6. "A: [Mr. James] took us out there and said this is where I'm going to give you the right of way, pointing to approximately the middle of his driveway, and said it's going to go north along the road 50 feet and to a certain wall. * * * He [said] we're going to put it so you've got part of my driveway because it would be rather difficult to move the wall."

and essential factual and legal issues. Because the trial justice failed to credit or reject certain facts presented at the hearing, this Court, regretfully, has no choice but to remand this case to the Superior Court for a new trial to determine whether defendants acquired a prescriptive easement over plaintiffs' property.

## D

### Easement by Substitution

■ The defendants further allege that the trial justice erred in failing to address their claim for an easement by substitution over the driveway. We have held that "[w]hen the owner of a servient estate closes with a wall or other structure the original way and points out another way which is accepted by the owner of the dominant estate, the new way may become a way by substitution." *Ondis v. City of Woonsocket*, 934 A.2d 799, 803 (R.I.2007) (quoting *Hurst v. Brayton*, 43 R.I. 378, 381, 113 A. 4, 5 (1921)). Again, our review of the record reveals unaddressed issues that were raised in the pleadings and testified to at trial. Salvatore Scavello testified that Mr. James

> "took us out there and he said this is where I'm going to give you the right of way, pointing to approximately the middle of his driveway, and said it's going to go north along the road 50 feet and to a certain wall. * * * He [said] we're going to put it so you've got part of my driveway because it would be rather difficult to move the wall."

This testimony indicates that perhaps plaintiffs' predecessor granted defendants an easement by substitution. However, the trial justice failed to determine whether sufficient factual support existed to conclude that an easement by substitution was granted. Thus, because the trial justice failed to credit or reject this testimony, and failed to make any findings of fact or

conclusions of law on this issue, this Court has no choice but to remand this case to the Superior Court for a new trial, to determine whether defendants acquired an easement by substitution over plaintiffs' property.

## E

### Contempt

■ The defendants' final contention is that the trial justice erred in awarding counsel fees as a sanction for contempt. "A civil contempt proceeding is an appropriate vehicle to enforce compliance with court orders and decrees when attempting to preserve and enforce the rights of [the parties]." *Gannon*, 819 A.2d at 661 (quoting *Trahan v. Trahan*, 455 A.2d 1307, 1311 (R.I.1983)). The defendants' contention is unavailing in view of the evidence in the record. They have a long history of violating court orders issued in favor of plaintiffs. Despite the fact that this trial justice, as well as several other justices, explicitly told defendants where the right-of-way was legally located, defendants nevertheless continued to clear trees and vegetation in an area outside the right-of-way. Taking their conduct as a whole, the trial justice concluded that defendants intentionally "paid no attention to the court order." It is evident to us that this conclusion was soundly within his discretion.

■ Moreover, it is within the court's discretion to award "counsel fees in order to make an innocent party whole." *E.M.B. Associates, Inc. v. Sugarman*, 118 R.I. 105, 108, 372 A.2d 508, 509 (1977). Accordingly, because the trial justice's award did not constitute an abuse of his discretion, we affirm his decision.

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed in part

and reversed in part. The record shall be remanded to the Superior Court for a hearing on the issues of prescriptive easement and easement by substitution. Because of the age of this case, we respectfully urge that this matter be placed down for a determination at the earliest possible time.